All right Mr. Post and Ms. Schraer if you can turn on your equipment. Mr. Post do you hear me all right? I can hear you. Great and Ms. Schraer? Yes I can hear you. Our next case for argument is Dunlap v. City of Sandy and Mr. Post I believe you may please the court. My name is Carl Post. I'm appearing on behalf of the appellant Kathleen Dunlap. Just a brief rundown of some of the relevant facts as we're aware Mr. Dunlap has a disability from bipolar disorder and on November 6 2015 Mr. Dunlap had a mental crisis which resulted in domestic disturbance. Mrs. Dunlap's father Mr. Brian called the police and reported that Mr. Dunlap was attacking Ms. Dunlap. While on the phone Ms. Dunlap screamed that Mr. Dunlap had hit her and that her his knee was on her chest. Officer Luke Hodges responded to the scene and Mrs. Dunlap reported that Mr. Dunlap struck her, that he held her on the ground, that she was afraid of her husband, they had bipolar disorder, and Mrs. Dunlap requested assistance and protection for her own safety, Mr. Brian's safety, and Mr. Dunlap's safety. Mr. Hodges, Officer Hodges responded that the Sandy Police Department had a policy of not intervening with people that had mental disabilities. It's that policy, that discriminatory policy that is kind of the crutch or crux of this case rather. So moving on to specific claims, I'll start addressing Mrs. Dunlap's disability claims in 1983 claims somewhat together because they do have overlapping issues. The first part of her claim is that the city failed to provide the services that they would have provided to anyone else if a person with a disability was not involved. In January, Officer Hodges stated that he was going to provide a service of assisting Mrs. Dunlap in retrieving weapons and medication and other items from her home. He ultimately did not do so and plaintiff's allegation is that the motive for not doing so is that Mr. Dunlap has a mental disability. Mr. Post, can I, this is Judge Watford, are you able to hear me? I can hear you. Okay, I'm getting a tremendous amount of echo. I hope you're not. Can I ask you in terms of the services that you say were not provided to your client on the January date, do you contend that those services also include the failure to do it to that statute that you rely on? Yeah, I mean, I believe the proper way to phrase it is, I mean, it would have involved an arrest but a failure to protect Mrs. Dunlap as required by the statute both in November and in January. The criteria was met under the statute on both occasions. Okay, that's what I'm triggered. It says when a peace officer responds to an incident of domestic disturbance, did that occur on the January date? Yes, I believe what qualifies there is that, I apologize, the second part of the statute, I mean a domestic disturbance was reported and the other part of it is not only that domestic abuse occurred if someone was in fear of imminent harm to their to their selves. Yes, no, no, I understand that. I'm focusing on the word responds. Well, because on the November date, the officer actually went to the house and all the parties were present. I believe, I guess I have that he responded to her 911 call and I don't know that the statute, I guess, to be honest, I'm not clear from the notes I have before me if he actually went to the house or went and spoke to Mrs. Dunlap in person or if the statute actually requires a physical response if responding by telephone is also responding to someone's reported domestic violence. So I think it would be 133.055 as it has a mandatory term to arrest. Our position, particularly under the ADA, is that even if it's not a mandatory duty to arrest, that you can't, an officer can't use a discriminatory motive as a reason not to enforce the statute. And it would be the same as if a police department had a policy not to protect victims of domestic violence because they were black or other minorities or because they were gay, anything like that. The sole motive and reasoning for not protecting Mrs. Dunlap was because of Mr. Dunlap's disability. And on its face, that would be a violation of both the ADA and the Rehabilitation Act. Mr. Post, are you necessarily arguing, then, that James had a right to medical services? So under Mr. Dunlap's claims, yes. It's our position that the district court focused a lot on what were mandatory services or not, but that's not the protection that the ADA provides. Once a public entity starts providing services to the public, they have to provide those services equally. And, you know, we listed general services that they provide, investigating crimes, protecting victims, assisting people with emergency services, including medical care. And it's our allegation that the officers of the city at the Sandy Police Department would assist anyone else with medical care that they needed. And therefore, if you'll do that for everyone else, you can't have a policy that we don't do it for people that have a mental disability. That's the, you know, our position is the focus here should be on the discriminatory motive here. And that's what you need to look at. If you're providing these general services, then you have to provide the general services to everyone. You can't just pick out portions of the population and say, well, yeah, we would protect this person, but because there's a mental disability involved, now we're not going to provide this protection. And that's back to Mrs. Dunlap's claim. That's our whole point here is that if Officer Hodges would have went to anyone else's house in November or spoke to the person in January about the same facts, if you take away the mental disability, the victim would have been protected. And that's what violates, that's the discriminatory motive, and that it's even rises above deliberate indifference. That's intentional discrimination because he is making a distinction based on the presence of this disability. Can I ask you, again, Mr. Post, Judge Watford, I guess I'm more inclined to think you might be right with respect to the failure to arrest on the January date, but not as to the failure to assist in retrieving the gun. Because as I understand it from your allegation, the officer did not show up that night out of some discriminatory motive. It was rather that he was tied up on some other call and just could not get free in time to make it to the house. Am I wrong in my Well, the initial delay was that he was tied up on something. And that's what my client knows. But we haven't alleged that the delay continued throughout the night and that at some point he could not fulfill the service that he promised to do. That part there, I think, is where the parties needed to conduct some discovery onto the issue versus because we agree that he told our client there was a limited, that there was a delay for some time. But at some point, that delay must have come to an end. And that's when the services would have been provided. And as I stated, it's our belief that the reason to not go later in On Mrs. Dunlap's 14th Amendment right, I just wanted to point out a few differences that I believe exist between the Castle Rock case. One, the Castle Rock, it was not based on any kind of discriminatory motive. And here, that claim, having a discriminatory reason not to enforce the statute would violate the 14th Amendment's Equal Protection Clause. And additionally, in Castle Rock, the court concluded that there was no indication that the victim had the right to enforce the statute. In Nearyen, the Oregon Supreme Court stated that these statutes are specifically drafted for the right of the victim and they actually have a negligence court claim that they can bring if an officer fails to enforce these statutes. So Oregon is different that there is a clear indication that Oregon has intended the victims to be able to enforce the statute. As Nearyen states, the mandate to, it's mandatory arrest and additionally sets forth with precision to when, whom, and under what circumstances police protection must be provided. Failure to provide that protection is, again, the major portion of both Mrs. Dunlap's disability claim and her 1983 claim. Mr. Post, can I ask you a question? This is Judge Thunheim. On Kathleen's ADA and RA claims, you're seeking monetary damages. Is it an allegation, a demonstration of deliberate indifference necessary for those claims to succeed? And have you alleged deliberate indifference in the most recent complaint? Well, as I stated earlier, I think we actually go beyond deliberate indifference. You can prove it by intentional discrimination or intentional discrimination can be proven with a showing of deliberate indifference. And I do think we satisfy deliberate indifference. But here, when your policy is we do not provide this service because a disability exists, that's just direct evidence of intentional discrimination. And so, you know, deliberate indifference is normally used because, you know, with, like, a deaf person, they don't say, well, I'm not going to give you an ASL interpreter because you're deaf. That, you know, that scenario doesn't typically arise. Here, the service was intentionally not provided because of Mr. Dunlap's disability. So I think we do satisfy the requirements to be able to get monetary damages. So the policy itself is evidence of deliberate indifference, even though I don't know that the complaint actually alleges deliberate indifference. But your argument is that the policy demonstrates that without a specific reference. Is that correct? Yes. But again, also, deliberate indifference is one way to prove intentional discrimination. You can also prove it if someone says, I'm not going to, you know, I'm firing you because you're African-American. That's just direct evidence of intentional discrimination. Here, saying we're not going to provide a service because of Mr. Dunlap's disability is direct evidence of intentional discrimination. Did I save my last minute for? Yes. Yes, you did. Counsel, for the city. Please, the court, Janet Schreier on behalf of the city and Officer Hodges. I want to respond sort of to what the conversation was just going on relating to the deliberate indifference part of the claim. And yes, it's true, Judge Tunheim, that plaintiff did not even allege deliberate indifference that misses Dunlap's claim. And that is, as we pointed out brief, this is a motion to dismiss on the face of the pleading. And that is fatal to her pleading. Getting back to, I want to talk more sensitively about the deliberate indifference in this case or lack thereof. There's two sets of fact situations, as you know, from November of 2015 and then again in January of 2016. And frankly, I think the November allegations aren't relevant to most of the points that we're talking about, because whatever hold there would have been or arrest or whatever, there's a long time lag. So it's not relevant to the discussion. What's really relevant is the allegations as to the January event. And I think, Judge Watford, you're correct that they don't allege that the officer responded. Well, actually, they do they do allege that, because she called 911 on that day. And the complaint alleges that Officer Hodges responded to her 911 call. Now, by telephone, I grant you that. But I'm not sure why that would take her situation outside the terms of the statute. Maybe you can help on that. I think it would take it outside the terms of the arrest. And take arrest requires you to be present. So I think by virtue of alleg stating in the statute responding and thereby responding by arrest, it entails necessarily that he be there in person. Do you have any legal authority to support that intuition on your part? I don't have anything in front of me on that point. But I think that's just one incidental thing to look at. I think further, though, if you look at the allegations on the complaint, you don't get to deliver indifference, which is required for both for the ADA, for the RA claim, and also for the substantive due process claim. Let's put aside the constitutional claim and focus on the ADA claim, if we can for a minute. Okay. Because there, maybe you can respond to Mr. Post's argument that what the statute requires is intentional discrimination. It doesn't require deliberate indifference. Deliberate indifference is just one kind of watered-down version of what would amount to intentional discrimination that can be used to satisfy that statutory requirement. Here, he has alleged that the city actually had a policy that on its face was discriminatory. So it seems to me he's right that that in and of itself constitutes intentional discrimination. There's no ambiguity in terms of what the motive was. According to the allegations in the complaint, Officer Hodges told the plaintiff that the city had a policy of not basically intervening. And here, I would focus on the arrest part of it. You know, we're not going to get involved when somebody has a disability. It seems to me that's just facially discriminatory. And so there's, it's quite easily satisfies the intentional discrimination requirement. So what, why is that theory wrong? Again, this is a 21, Rule 12b6 dismissal. And if you look at the allegations of the complaint, their conclusory allegation about intentional discrimination based on not in any way dealing with people with mental disabilities is belied by plaintiff's own allegation. If you turn to the first amended complaint in the excerpt of page 58, Officer Hodges called Mrs. Dunlap and stated they were going to meet at the house in the afternoon. Let me stop you there. Let me ask you to back up. Go to page 57 and look at paragraph 7. Look at paragraph 17. And this is when she is first called him and he's responded to her 911 call. And she's saying that once again, he has threatened to kill me. He's basically snapped in a never seen him snap before. And she begs him, can't you please take him into custody, put him into some kind of protective hold or something, please. And what he says, according to the complaint, is defendant Hodges replied to Mrs. Dunlap that it was the policy of the Sandy Police Department not to get involved when dealing with mentally ill individuals. There's nothing conclusory about that. It's stated as a direct conversation that she had with the But Judge Watford, you have to look at the balance of the allegations that follow that. Look at the paragraphs 18, 19, 20, 21. He did not fail to deal with her or attempt to assist her. In fact, Officer Hodges engaged. They made a plan for him to assist her. So simply saying they have an intentional policy is belied by the very allegations of the complaint that this case is being judged by. In paragraph 21, it says Officer Hodges called Dunlap and stated that the plan that they had made, he couldn't engage in it at that moment because he was delayed as he was handling another call. And he's saying that you're focused. You are focused. Hang on a second. You are focused on the failure to retrieve the gun. And I'm with you, perhaps, on that. What I'm focused on is the failure to arrest. Right, because that that Oregon statute is somewhat unique, at least as far as I'm aware of state law provisions that actually, according to that Oregon Supreme Court case, it gives an individual citizen a right to have another private citizen arrested under certain circumstances. And I think that's her strongest claim here, is that that state law conferred upon her a personal right to have Officer Hodges take her husband into custody when she made that 911 call. And it's undisputed that he did not do that. And he didn't do that, according to his own statement, according to the allegations and complaint. He didn't do that because the city had a policy that was discriminatory on its face. So I focus on that point. Forget about the failure to retrieve the gun. I grant you that that's a little bit more ambiguous. But the focus on the failure to arrest in response to her 911 call, begging the officer to please take her husband into custody because he had threatened to kill her and was totally out of control. And he refused to do so. Well, I disagree with the legal part of your argument, so to speak, on a couple bases. First of all, we don't agree that the Oregon Statute 133.0552 provides an absolute right to an arrest. There is a discretionary portion to it because it discusses probable cause and it discusses evaluation of other factors. So it didn't, in the first instance, entitle them to arrest. And to the extent it can be read that way and interpreted in the Neering case that I believe you were referring to, Neering did not interpret the circumstances here. It interpreted the application of the statute in connection with violation of a restraining order, which is a different circumstance. And it further didn't address the circumstances. Yes, yes. But that case, that case, as you're well aware, grouped our statute together with the restraining order statute and it said both of them gave rise to a mandatory duty to make the arrest. And you're right that the statute, our statute, is triggered only if the officer has probable cause. But I don't think on the allegations of the complaint there could be any dispute that Officer Hodges most definitely had probable cause because she told him that he threatened to kill me. That's exactly the circumstance that the statute says gives rise to the mandatory duty to make an arrest. So there was probable cause, or at least there's sufficient allegations of that to survive a 12b6 motion. And after the probable cause condition is satisfied, there is no other discretion that's left with the officer. That's the whole point of the statute. The duty to arrest at that point is mandatory. Well, but the point that's made, the town of Castle Rock versus Gonzalez case, the U.S. Supreme Court case, evaluated cases like Neering in a statute, Colorado statute, that's similar to the statute we have here. And in that case, the Supreme Court said basically mandatory does not mean mandatory. And you can't read it that way for the purpose of state laws and cases interpreting them for the purpose of federal rights and constitutional rights, federal statute and constitutional rights. And that the underlying sensitive interest created by an independent source like state law does not determine entitlement under either the Due Process Clause or under federal statutory rights. So the fact that it says that... Well, the U.S. Supreme Court does not get to tell Oregon what its state laws mean. And we have a Oregon Supreme Court case that tells us that statute really, when it says shall, it really means shall. Nothing the U.S. Supreme Court says about a Colorado statute can affect what the Oregon law means, because the Oregon Supreme Court gets the last word on that. So you're right that the case you're citing deals with the 14th Amendment and what constitutes a protectable property interest, perhaps for the purpose of the Due Process Clause. But I'm talking about the ADA claim. And that is going to be a plaintiff a right to obtain. And I just don't see any way around the view that, in Oregon at least, she had a right to have her husband arrested, provided that there was probable cause that, you know, a certain type of threat was made. And she's alleged that that information was communicated to the officer. But the Castle Rock case specifically said that regardless of what the state law is, that does not bind the federal courts related to federal rights. And the federal rights are what is at issue here in this case. But didn't the Castle Rock statute say that you can make an arrest unless it would be impractical? And there's no such wiggle room in the Oregon statute, is there? I agree the wording is different. We also think it is not a mandatory statute, that there is room for discretion within the statute, not only on the word probable cause, but under the factors in the subsection C, I think it is, in the statute, that permits the discretion and therefore is not a mandatory matter. And it falls within the Castle Rock, under the Castle Rock authority. The subsection C factors that you're talking about just deal with the officer trying to figure out who's the assailant and who's the victim, right? Well, those same factors are the same factors you're looking at with regard to probable cause and what to do. The allegations of the complaint are unambiguous. There's no ambiguity. He threatened to kill me. I'm talking about the January incident. There's no ambiguity that, oh, well, maybe she was the assailant and he was the victim, right? So that's what I'm saying. I just don't see how you're looking at this statute and looking at the allegations and the complaint about the January incident and coming to the conclusion that there was some kind of discretion on Officer Hodge's part not to make an arrest. Because officers are entitled to discretion with regard to whether to arrest. And that was accepted and observed by the Supreme Court in the Castle Rock case. So I guess we can agree to disagree on that point, and I will move on. Um, you still don't get to the deliberate indifference allegation or deliberate indifference requirement for the ADA and for the RA claim, as well as the substantive due process. Deliberate indifference is a stringent fault standard, and it requires more than negligence. It requires a culpable mental state, recognizing an unreasonable risk, and actually intending to expose the plaintiff to the risk without regard to the consequences. Here, while in the first incidents in November, there's some mention of risk to Mr. Dunlap. In the January, there is virtually no indication that it was ever communicated to the officer that Mr. Dunlap was at risk for suicide. I mean, recall, that's the, so these, all these statutes are related to domestic violence that of the family members. In this case, the problem or the harm that we felt here is Mr. Dunlap, and there was nothing to indicate to the officer that Mr. Dunlap was stating under the stringent deliberate indifference standard that he was threatening harm to himself. And so we also think, based on the allegations of the complaint, which is what we're looking at here, that there is not a deliberate, they did not allege how the city was deliberately indifferent, because he did not know that Mr. Dunlap was at risk for suicide. Again, the allegations are related to hurting other people, not related to hurting him. I also want to talk a little bit about the substantive due process claim, that Mr. Dunlap is the only one with a substantive due process claim. And it is precluded, if he has an ADA and RA claim, Mrs. Dunlap did not assert a substantive due process claim. She only asserted a procedural due process claim, and she doesn't allege anywhere, as the district court pointed out, what procedural right she was trying to get. She talks about her substantive claim, but it's labeled a procedural due process claim, and she did not adequately allege procedural, because she didn't allege what procedure it was that she wanted to have employed, and there is none. So that claim should be The plaintiffs also don't have a Monell claim against the city. The city cannot be responsible, because there's no direct causal link between the municipal policy and the alleged constitutional deprivation here. Also, there's not deliberate indifference, and that goes to the Monell claim. Looks like I'm over my time. I don't know if there's more questions. Finish up there. You have a lot of questions. So, but you are over. Okay. Well, I am just, they also don't have a state law wrongful death claim, but this is not, I don't think we need to get into that here. I think it's laid out in our brief, and the judge very adequately set out in the district court opinion why none of these claims, they just simply don't allege enough, despite having more than one opportunity to allege the claims. Even after the original dismissal, they came back and were unable to allege any more than is alleged here. So we think they don't have any of the claims alleged here. If they do, we would alternatively ask that you affirm on the claims that you feel are not established on the face of the complaint and only reverse as to those claims which they, you find that they have alleged adequately. Okay. Thank you. You have a minute for rebuttal, counsel. Thank you. I don't have much to add, just mostly, I think both sides briefed the issues pretty thoroughly, but I did want to point out about the ADA precluding the 1983 claims. And I don't know that there's a Ninth Circuit case directly on, pointing on this, but I did find a Sixth Circuit case, it's Bullington v. Bedford, that's 905F3D467, that does state the ADA does not preclude 1983 claims for disability discrimination that allege constitutional violations, even when they do run parallel to the statutory claims. And here, again, our argument is that this, the conduct violates the Equal Protection Clause as well, and that's why there's an independent constitutional claim there. And so we don't believe that the 1983 claim should be dismissed just because there's an ADA claim. Okay. Thank you for your time. Thank you, counsel. We appreciate your arguments this morning. It's an interesting case. Thank you. Matter is submitted at this time. And I think that ends our session for today. Yes. The court for this session now stands adjourned. Thank you, everyone.
judges: Paez, Watford, Tunheim